**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2022 IL App (3d) 190780-U

Order filed May 12, 2022

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2022

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-19-0780 Circuit No. 19-CF-112 |
| | ) | |
| JOSH L. McCALL, | ) ) | Honorable Kevin W. Lyons, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE O'BRIEN delivered the judgment of the court.
Justice Lytton concurred in the judgment.
Justice Holdridge concurred in part and dissented in part.

**ORDER**

¶ 1    *Held*: (1) The circuit court did not err in granting the State's motion for an extension of the speedy trial period for DNA testing. (2) The circuit court erred in refusing to calculate and enter the sentencing credit defendant received for successful participation in the Peoria County Jobs Partnership Program.

¶ 2    Defendant, Josh L. McCall, appeals from his convictions for predatory criminal sexual assault of a child and aggravated criminal sexual abuse. Defendant argues his speedy trial rights were violated and that the Peoria County circuit court erred in refusing to calculate sentencing

credit for his successful participation in the Peoria County Jobs Partnership Program (Jobs Partnership Program). We affirm in part, reverse in part, and remand with directions for the court to calculate the Jobs Partnership Program credit.

¶ 3                                    I. BACKGROUND

¶ 4        On February 26, 2019, the State charged defendant with predatory criminal sexual assault of a child (720 ILCS 5/11-1.40(a)(1) (West 2018)) and aggravated criminal sexual abuse (*id.* § 11-1.60(c)(1)(i)). Defendant was arrested on these charges in Kansas City, Missouri, on March 4, 2019, and taken into custody in Peoria on March 27, 2019. At arraignment, the court appointed the public defender to represent defendant.

¶ 5        Defendant's case was first set for jury trial on June 17, 2019. On June 6, the State moved to continue the trial date because the DNA analysis had not been completed on the sexual assault kit. The circuit court granted the motion, and the case was reset for jury trial on July 22, 2019. A hearing on the State's motion to introduce out-of-court statements pursuant to section 115-10 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/115-10 (West 2018)) began on July 17 and finished on July 19, 2019. On July 18, defendant personally filed a motion to dismiss for speedy trial violation. After the conclusion of the hearing on July 19, defense counsel adopted and argued defendant's motion to dismiss. The court denied the motion as the existing trial date was set 118 days from the date defendant was taken into custody in Illinois.

¶ 6        After the court ruled on the motion to dismiss, the State made an oral motion to continue the jury trial and for an additional 120 days to obtain the results of the DNA testing pursuant to section 103-5(c) of the Code (*id.* § 103-5(c)). After making the motion, the State represented the following to the court. Part of the testing had been completed but the final analysis and report would not be finished until the following week. A known standard that had been obtained in the

Department of Corrections (DOC) from a prior prison sentence had been used to this point, and the State had discussed with defense counsel that morning about defendant providing a prejudice free swab. The State represented that defendant had agreed to provide a buccal swab that morning. The court inquired about the delayed analysis, and the State represented that the laboratory informed it that the submission of the new sample would "not delay things in any way, shape, or form." The State had an investigator standing by to deliver the swab directly to the Morton crime laboratory. The State told the court that it had spoken with the director of the laboratory, and she informed them that the results had been prioritized to be completed before the trial date, but a laboratory error prevented the analysis from being finished. The director offered to instruct an analyst to work through the weekend to complete the analysis.

¶ 7 At this point, the court stated that it was disingenuous of the laboratory, that they were previously advised and still did not "hop to it." The State then informed the court that it had discussed the case with the laboratory in May, and the laboratory said they could have the analysis finished in a week. The State reiterated that it was asking for a continuance pursuant to section 103-5(c) of the Code so DNA testing could be completed for both parties. The parties began to search for a new trial date. Defense counsel informed the court that he was unavailable on August 5 due to another scheduled trial. The court's schedule was heavy for the remainder of August, and it suggested September 9 or 16. Defense counsel asked for September 9 representing that he had a conflict with the week of September 16. The record contains no objections made by defense counsel or defendant. The motion was granted, and the parties agreed on a new date of September 9, 2019, for jury trial with a date in the end of August for the court's ruling on the previously argued motion to admit out-of-court statements.

¶ 8 After this date, the State filed a motion for disclosure of samples. Defendant failed to provide the new buccal swab on July 19, 2019. In their motion, the State disclosed that the laboratory analyst had analyzed the swabs on July 20 and 21, extracting male DNA from three of the swabs, indicating that the extracted DNA may be suitable for Y-STR testing. Defendant was ordered to provide a buccal swab which he provided on August 8, 2019. On that day, the State informed the court that Y-STR testing was performed in Springfield and would take a month to complete, meaning the DNA analysis would not be completed by the September 9 trial date. The court continued the jury trial to October 21, 2019. The case proceeded to trial on that date and the jury found defendant guilty of both counts.

¶ 9 On December 18, 2019, a hearing was held on defendant's motion for a new trial based on a failure of the State to show the due diligence required to obtain a continuance under section 103-5(c). After hearing arguments, the court denied the motion, stating that enough effort had been articulated along the way to show due diligence on the part of the State. The court mentioned that the State indicated it had made "call after call and visit after visit" to the laboratory. He described their efforts as "dogged." Further, it recalled the laboratory director testifying in this case or another recent case regarding the delays and workload and he did not believe that testimony to be disingenuous. After the denial of this motion, the case proceeded to the sentencing hearing.

¶ 10 During the sentencing hearing, evidence, including the presentence investigation report (PSI) was presented. The PSI indicated that defendant participated in the Jobs Partnership Program at the Peoria County jail. According to a letter from the assistant director of the program, defendant successfully completed the program, graduating after 128 days of classes. During the hearing, the court expressed confusion over how defendant received a place in the program. Defense counsel argued defendant's participation in mitigation, stating that instead of doing nothing while he was

4

being held in the county jail, "[h]e did take the initiative to attend the program." At the conclusion of the hearing, the court sentenced defendant to 44 years' imprisonment on the predatory criminal sexual assault of a child charge. The court imposed no sentence on the aggravated criminal sexual abuse charge. After defendant received his appeal rights and the court agreed to direct the clerk to file a notice of appeal, defense counsel asked the court if defendant could receive sentencing credit for his participation in the Jobs Partnership Program. The court denied this request, stating: "I find that it does not apply. I do that because I can't determine what his days were and he's not credible." Defendant appeals.

¶ 11                                    II. ANALYSIS

¶ 12                                   A. Speedy Trial

¶ 13        Defendant argues that his right to a speedy trial was violated when the circuit court erroneously granted the State's motion for an extension of the speedy trial period to obtain DNA results where there was no showing of due diligence on the part of the State. A defendant is guaranteed the right to a speedy trial both constitutionally and statutorily. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, § 8; 725 ILCS 5/103-5 (West 2018). While the constitutional and statutory rights address comparable concerns, "the rights established by each of them are not necessarily coextensive." *People v. Kliner*, 185 Ill. 2d 81, 114 (1998). Here, defendant asserts a violation of his statutory right to a speedy trial.

¶ 14        Section 103-5(a) of the Code requires that every person in custody in this state shall be tried within 120 days from the date they were taken into custody. 725 ILCS 5/103-5(a) (West 2018). Two exceptions exist to this rule. The first, which is not at issue here, where "delay is occasioned by the defendant" *Id.* The second, which does apply here, where the State, having exercised due diligence without success, can apply for an extension of the speedy trial period to

5

obtain material evidence. *Id.* § 103-5(c). Regarding DNA evidence, section 103-5(c) specifically states:

> "[i]f the court determines that the State has exercised without success due diligence to obtain results of DNA testing that is material to the case and that there are reasonable grounds to believe that such results may be obtained at a later day, the court may continue the cause on application of the State for not more than an additional 120 days." *Id.*

¶ 15　　As an initial matter, the State argues that defendant forfeited this issue by failing to object to the motion to extend the speedy trial period. Defendant argues that the issue was not forfeited but, if it was, it may be reviewed under the plain error doctrine. The record clearly indicates that defense counsel made no objection at the time of the State's motion and raised the issue for the first time in a posttrial motion. To preserve an issue for review, a defendant must make a contemporaneous objection and raise the issue again in a posttrial motion. *People v. Hillier*, 237 Ill. 2d 539, 544 (2010). Since no contemporaneous objection was made in this case, the issue has been forfeited and can only be reviewed for plain error. We begin our plain error review by determining whether an error occurred. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

¶ 16　　A circuit court's ruling on due diligence will not be overturned unless it amounts to a clear abuse of discretion. *People v. Swanson*, 322 Ill. App. 3d 339, 347 (2001). "A trial court abuses its discretion where its decision is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the court's view." *People v. Curry*, 2020 IL App (2d) 180148, ¶ 39. Whether the State exercised due diligence is decided on a case-by-case basis, after a careful review of the specific circumstances of the case. *Swanson*, 322 Ill. App. 3d at 347. The burden is on the State to prove they exercised due diligence. *People v. Spears*, 395 Ill. App. 3d 889, 893 (2009). "Whether the

6

trial court abused its discretion when it determined the exercise of due diligence is a question reviewed by an examination of what information the court had before it when it made its finding." *People v. Battles*, 311 Ill. App. 3d 991, 1003 (2000). "Thus, when a defendant challenges the trial court's grant of a continuance under section 103-5(c), we examine the record as it existed at the time of the motion." *Spears*, 395 Ill. App. 3d at 893.

¶ 17   The State made its motion to continue on July 19, 2019. At that time, the State had not caused any significant delay in sending the samples to the laboratory as the laboratory had the samples since May 2019. Also, the State spoke with the laboratory on several occasions. The record reflects conversations in May and July and conversations with the analyst and the laboratory director regarding the testing. The failure of the State to obtain a prejudice free swab before the July 19 date had no bearing on the continuance it sought that day. Even if a prejudice free sample from defendant had been submitted to the laboratory months prior to July 19, the error that occurred would still have prevented the analysis from being completed on time. The efforts of the State in this case, in sending the samples to the laboratory without significant delay, following up with the laboratory regarding the results, and informing them of important trial dates constituted a diligent effort to obtain the results within the 120-day time frame.

¶ 18   The laboratory's efforts were also detailed on the record at the time of the motion. The laboratory had prioritized the sample to be completed before trial, but an error occurred preventing that from happening as planned. However, part of that testing had been completed but the analysis and final reports remained outstanding. Further, the laboratory offered to have an analyst work through the weekend to complete the outstanding analysis. Regardless of the court's complaints that the laboratory did not "hop to it," the efforts of the laboratory in this case, in prioritizing the sample to be completed on time and offering to complete the analysis over the weekend to mitigate

7

the error further established the State's diligent effort to complete the testing within the 120-day time frame.

¶ 19    We find, based on the information before the circuit court at the time of the motion, that the decision to allow the motion was not arbitrary or capricious and that a reasonable person could have found due diligence on the part of the State. Therefore, there was no abuse of discretion in allowing the State's motion to extend the speedy trial period to obtain the DNA results.

¶ 20    Defendant argues that the circuit court considered information outside of the record in making its decision to grant the motion for extension of time. "Deliberations of the court must necessarily be limited to the record before it." *People v. Steidl*, 177 Ill. 2d 239, 266 (1997). "However, not every departure from the rule will call for reversal" and "[a] showing of prejudicial effect is required." *Roth v. Roth*, 45 Ill. 2d 19, 25 (1970).

¶ 21    The court does mention facts that are not contained within the record of this case when ruling on the posttrial motion, citing testimony of the laboratory director in another case, as well as referencing "call after call and visit after visit" by the State. However, because the information presented, on the record, at the time of the motion was sufficient to establish due diligence, any consideration of information outside the record did not prejudice defendant.

¶ 22                                    B. Sentencing Credit

¶ 23    Defendant argues that the circuit court erred in refusing to calculate the presentence incarceration credit for defendant's participation in the Jobs Partnership Program. Defendant argues that calculation of the credit is mandatory and, therefore, defendant's qualification for the credit is a matter of statutory interpretation to be reviewed *de novo*. The State argues that section 3-6-3(a)(4) of the Unified Code of Corrections (730 ILCS 5/3-6-3(a)(4) (West 2018)) gives the

8

circuit court the discretion whether to calculate the credit and, therefore, the standard of review should be abuse of discretion.

¶ 24    To determine the appropriate standard of review, we first turn to the plain language of the statute. "In determining the plain meaning of statutory language, we consider the statute in its entirety, keeping in mind the subject it addresses and the apparent intent of the legislature in enacting it." *People v. Montalvo*, 2016 IL App (2d) 140905, ¶ 17. "If the statutory language is clear and unambiguous, we must apply it as written, without resort to extrinsic aids of statutory construction." *Id.*

¶ 25    Here, section 3-6-3(a)(1) states "[t]he [DOC] shall prescribe rules and regulations for awarding and revoking sentence credit for persons committed to the Department which shall be subject to review by the Prisoner Review Board." 730 ILCS 5/3-6-3(a)(1) (West 2018). Regarding the specific sentencing credit at issue in this case, section 3-6-3(a)(4) states that the rules shall provide those individuals held in pretrial detention who successfully completed a qualifying program provided by the county jail may be provided sentence credit. *Id.* § 3-6-3(a)(4). This section continues, the "[c]alculation of this county program credit shall be done at sentencing as provided in Section 5-4.5-100 of this Code and shall be included in the sentencing order." *Id.* Viewing the statute as a whole, it is clear that the discretion to award the sentencing credit lies with the DOC. The statute also imposes a duty on the circuit court to calculate the program credit and include that calculation on the sentencing order. As such, the issue is a matter of statutory interpretation, not discretion, and is subject to *de novo* review. *Montalvo*, 2016 IL App (2d) 140905, ¶ 17.

¶ 26    During the sentencing hearing, evidence was presented that defendant successfully completed the Jobs Partnership Program. A letter from the assistant director of the program

9

indicated that defendant had graduated from the program after 128 days in classes. This evidence was briefly discussed during the hearing with no calculation or indication that it should be included on the sentencing order. On appeal, the parties agree that based on the documentation provided, defendant satisfied the requirements of section 3-6-3(a)(4). As such, defendant is entitled to a calculation of the credit, which needs to be entered on the sentencing order.

¶ 27    As there was only a brief discussion of the credit at the sentencing hearing, we remand the cause with directions for the court to calculate the amount of credit owed to defendant. Illinois Supreme Court Rule 472 (eff. May 17, 2019), which provides that the circuit court retains jurisdiction to correct certain errors in sentencing, clearly states the remedy in such cases.

> "In all criminal cases pending on appeal as of March 1, 2019, or appeals filed thereafter in which a party has attempted to raise sentencing errors covered by this rule for the first time on appeal, the reviewing court shall remand to the circuit court to allow the party to file a motion pursuant to this rule." Ill. S. Ct. R. 472(e) (eff. May 17, 2019).

Thus, we reverse the court's finding that the credit does not apply and remand the cause with directions for counsel to file a motion to amend the judgment to include the calculation of sentencing credit.

¶ 28                                    III. CONCLUSION

¶ 29    The judgment of the circuit court of Peoria County is affirmed in part, reversed in part, and remanded with directions.

¶ 30    Affirmed in part and reversed in part.
¶ 31    Cause remanded with directions.

¶ 32    JUSTICE HOLDRIDGE, concurring in part and dissenting in part:

¶ 33 I agree with the majority that the circuit court did not err in granting the State's motion for extension of the speedy trial period for DNA testing. However, I dissent from the majority's finding that the court erred in refusing to calculate the sentencing credit for the defendant's participation in the Peoria County Jobs Partnership Program.

¶ 34 Section 3-6-3(a)(4.6) of the Unified Code of Corrections (730 ILCS 5/3-6-3(a)(4.6) (West 2018)) states,

> "The rules and regulations on sentence credit shall also provide that a prisoner who has been convicted of a sex offense as defined in Section 2 of the Sex Offender Registration Act shall receive no sentence credit unless he or she either has successfully completed or is participating in sex offender treatment as defined by the Sex Offender Management Board."

A sex offense, as defined in the Sex Offender Registration Act, includes predatory criminal sexual assault of a child and aggravated criminal sexual abuse, which the defendant was convicted of in this case. See 730 ILCS 150/2(B)(1) (West 2018). Thus, the defendant was not eligible for sentencing credit for his participation in the jobs program, unless he had completed or was participating in sex offender treatment. The defendant provided no evidence that he met this requirement. Therefore, I would find that the defendant was not eligible for the sentencing credit and the court did not err in finding that it did not apply and not including it on the sentencing order. While this reasoning was not expressed by the circuit court or advanced by either party, we can affirm for any reason in the record. *People v. Sanchez*, 2013 IL App (2d) 120445, ¶ 27. Should, in the future, the defendant meet the requirements to receive the sentencing credit, he can petition for an award of such credit.